# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

JULIETTE N. PATTERSON,

        **Plaintiff,**

   **vs.**

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY

       **Defendant.**

CASE NO.  1:15-cv-00796-DAP

JUDGE DAN AARON POLSTER

<u>MEMORANDUM OF OPINION
AND ORDER</u>

Plaintiff Juliette Patterson challenges the final decision of Defendant, Acting

Commissioner of Social Security, denying her application for Disability Insurance Benefits

("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social

Security Act, 42 U.S.C. §§ 416(I), 423, and 1381 *et seq*.  The Court referred the case to

Magistrate Judge Kathleen B. Burke for preparation of a Report and Recommendation ("R&R")

pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b).  After reviewing the record, Magistrate

Judge Burke recommends that the Commissioner's decision be affirmed.  R&R 1, Doc #: 17.

However, Plaintiff objects to the R&R on three separate grounds.  Obj. 2–6, Doc #: 18.

The Court has reviewed the record, the briefings, the R&R, and the Plaintiff's Objections. For the reasons set forth herein, the Court adopts in part the R&R, vacates the decision of the Administrative Law Judge ("ALJ"), and remands the case to the Social Security Administration ("SSA") for further proceedings consistent with this opinion.

## I.    Procedural History

On January 18, 2012, Plaintiff filed an application for DIB and SSI, alleging a disability based on Crohn's disease, osteoporosis, stroke, and high blood pressure.  Tr. of Proceedings 78, Doc #: 11.  According to Plaintiff's claim, the onset of disability was August 5, 2010.  Tr. 78. The Ohio Division of Disability Determination ("DDD") denied Plaintiff's claims initially on June 1, 2012, and upon reconsideration on October 12, 2012.  Tr. 8.  Thereafter, Plaintiff requested an administrative hearing before the Office of Disability Adjudication and Review.  Tr. 143–44.

On November 6, 2013, a hearing was held before ALJ Penny Loucas.[1]  Tr. 8.  Both the Plaintiff and vocational expert Mark A. Anderson testified at the hearing.  Tr. 8. Based on this testimony and the record, the ALJ rendered a decision on December 24, 2013, determining that Plaintiff was not disabled and, notably, that Plaintiff's mental impairment was not "severe" within the meaning of 20 C.F.R. §§ 404.1520(c) and 416.920(c).  Tr. 8–9.  Following this decision, Plaintiff requested review by the Appeals Council.  Tr. 4.  On February 26, 2015, the

---

[1]    The Court notes that Plaintiff filed an application for disabled widow's benefits on March 19, 2013, following the death of her husband, Michael Patterson.  Tr. 205.  The SSA combined this claim with Patterson's pending DIB and SSI claims and considered it at the November 6, 2013, hearing.  Tr. 8.  For our purposes, however, the disabled widow's benefits claims are not relevant, as Plaintiff does not request judicial review on any grounds related to the claims for disabled widow's benefits.

Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner in this case.  Tr. 1–3.  Pursuant to Plaintiff's civil action under 42 U.S.C. §§ 405(g), this Court now reviews the ALJ's decision.

## II.      Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court's review of the ALJ's decision "is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance, or "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  On judicial review, it is not necessary that this Court agree with the ALJ's finding. *Id.* (citing *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999)).  Rather, the ALJ's finding must only be substantially supported by the record. *Id.*

After a thorough review of the record, Magistrate Judge Kathleen B. Burke has issued an R&R, recommending that the ALJ's decision be affirmed.  Under the relevant statute, Plaintiff is entitled to object to this R&R within 14 days after being served with a copy.  28 U.S.C. § 636(b)(1).  The failure to timely file written objections to a Magistrate Judge's R&R constitutes a waiver of the right to obtain a de novo review of the R&R in the district court.  *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981).  The failure to file written objections also results in a waiver of the right to appeal.  *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984).  When

//

//

objections are filed, the district court must make a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C).

The relevant inquiry for this Court is whether the ALJ's decision is substantially supported by the record. *Her*, 203 F.3d at 389–90.

## III.  Facts and Evidence

Based on Plaintiff's objections, the Court must review the record, including medical records, opinions, and testimony, de novo.  28 U.S.C. § 636(b)(1)(C).

### A.  Mental Impairment

The record reveals the following facts in relation to Plaintiff's claim that her mental impairment is severe for the purposes of 20 C.F.R. §§ 404.1520(c) and 416.920(c):

1. On April 13, 2010, Dr. Jamile Wakim-Fleming noted that Plaintiff was crying and very easily frustrated at an office visit.  Tr. 384.  Dr. Wakim-Fleming further noted that Plaintiff was concerned about the amount of medication she had been given during an emergency room visit.  Tr. 384.

2. On August 18, 2011, Plaintiff indicated to Dr. Nikolas Fouladpour that she was stressed.  Tr. 371.

3. On January 8, 2012, Plaintiff saw Dr. Mary K. Lane and complained of depressed mood, stress, and anxiety related to her Crohn's disease.  Tr. 328.  Plaintiff was tearful and upset and expressed that she felt like her life was falling apart.  Tr. 328. Plaintiff stated that she has support from her fiancé, but otherwise hesitates talking to friends and family about her Crohn's disease.  Tr. 328.  Dr. Lane's report indicates that Plaintiff had a depressed affect.  Tr. 330.  Plaintiff and Dr. Lane discussed treatment options, including medication and counseling. Tr. 331. Plaintiff expressed that she would like to think about the options and come back.  Tr. 331.

4. On June 11, 2012, Plaintiff saw Dr. Wakim-Fleming.  Tr. 543.  At this time, Plaintiff indicated that she had no depression or anxiety and no prior treatment for mental illness.  Tr. 543.

-4-

5.      On July 23, 2013, Plaintiff saw Dr. Lane.  Tr. 729.  Plaintiff indicated that she was
not sleeping well, worried all day, and felt like she was falling apart.  Plaintiff
complained of increased stress in the past several months, including that her children
were having problems coping with the death of their father and that she was caring
for an elderly aunt out of state.  Tr. 729.  Plaintiff reported support through her fiancé
and mother.  Tr. 729.  Dr. Lane referred Plaintiff to counseling and prescribed
Prozac.  Tr. 730.

In addition, the Ohio DDD referred Plaintiff to Dr. Herschel Pickholtz, a licensed

psychologist, for a consultative examination.  Tr. 533.  On April 14, 2012, Plaintiff saw Dr.

Pickholtz, who compiled a report regarding the evaluation.

According to Dr. Pickholtz's report, Plaintiff indicated that she was unable to work due to

"pain, back problems, knee and ankle problems, and Crohn's disease and Shingles."  Tr. 534.

She described her relationship with her boyfriend of 10 years as "okay" and reported good or

close relationships with her children, parents, and siblings.  Tr. 534.  Plaintiff described a past

relationship in which she was physically and mentally abused.  Tr. 534.  She also admitted to

psychiatric history running in the family, stating that her son is paranoid schizophrenic.  Tr. 534.

Plaintiff reported that her primary care physician diagnosed her with psychiatric

conditions but explained that she did not want treatment.  Tr. 535.  She described one "bout of

depression" and stated that she was depressed because of "financial and physical issues."  Tr.

535.  Dr. Pickholtz's report explains that Plaintiff showed "some psychiatric symptoms of some

depression."  Tr. 535.  Without psychiatric treatment, Plaintiff was experiencing "mild

performance issues at work" and "mild interactional issues with others."  Tr. 536.  However,

Plaintiff was able to resume some daily duties and responsibilities.  Tr. 536.  She also described

her ability to deal with work pressure and maintain relationships with coworkers as "average"

and reported no problems at work.  Tr. 536.  Upon examination, Dr. Pickholtz indicated that

-5-

Plaintiff's behavior was "unremarkable," stating that she "presented in a normal fashion."  Tr. 537.  He also noted that Plaintiff did not exhibit any symptoms of anxiety, determining that the impact of residual depression relative to her daily activities appeared to be within the moderate range.  Tr. 537–38.

Moreover, Plaintiff reported to Dr. Pickholtz taking care of her hygiene, changing clothes daily, and maintaining household duties.  Tr. 539.  She indicated that she sweeps the floor four times per month, vacuums and mops one time per month, shops one time per month, and cooks dinner four times per week.  Tr. 539.  She also uses her cell phone, watches television, and plays cards on a daily basis.  Tr. 539.  Although she described reading magazines, Dr. Pickholtz indicated that her ability to understand and remember television and written material was mildly impaired.  Tr. 539.  Plaintiff also reported that she sees her boyfriend three times per week, socializes with relatives one time per week, and visits her mother two times per week.  Tr. 539.  She also attends religious services three times per year.  Tr. 539.

Based on his observations—as well as a review of Form SSA 3367, Form SSA-5002, Progress Notes by Dr. Lane dated November 12, 2011, and Progress Notes by Dr. Fleming dated April 13, 2010—Dr. Pickholtz diagnosed Plaintiff with adjustment disorder as well as depressed mood and depressive disorder, both mild to moderate.  Tr. 540.  He opined that her capacity to understand, remember, and carry out instructions for unskilled labor was not seriously impaired.  Tr. 540.  However, Dr. Pickholtz indicated that Plaintiff was slightly impaired in her ability to

//

//

//

-6-

perform one to three step tasks and somewhat impaired in her capacity to relate to coworkers and supervisors and handle work pressures.  Tr. 541.  At the conclusion of his report, Dr. Pickholtz assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 58.[2]

On May 6, 2012, state agency reviewing psychologist Dr. Robyn Hoffman reviewed Plaintiff's file.  Tr. 73–75.  Dr. Hoffman's review indicates that Plaintiff had moderate problems with social interactions and concentration, persistence, or pace.  Tr. 73–75.  Dr. Hoffman opined that Plaintiff could perform a wide range of tasks that involve no fast pace or production quotas. Tr. 73–75.  Dr. Hoffman also opined that Plaintiff could superficially and infrequently interact with others.  Tr. 74–75.  Finally, on October 4, 2012, state agency psychologist Dr. Deryck Richardson reviewed Plaintiff's file and affirmed Dr. Hoffman's opinion.  Tr. 104–05.

In addition to these medical opinions, the Court also considers the testimony at the November 2013 administrative hearing in this case.  At the November 2013 hearing before ALJ Loucas, Plaintiff's testified briefly about her mental impairment and its effect on her daily life. Plaintiff testified that she has not gone to church regularly in years because she is embarrassed about using the restroom during church and worries about the smell.  Tr. 43.  She also stated that her depression affects her ability to work.  Tr. 51.  Upon questioning from her attorney, Plaintiff indicated that she has spoken to a therapist on two occasions and plans to see a psychiatrist in the future.  Tr. 51.

---

[2]     GAF considers psychological, social, and occupational functioning on a hypothetical continuum of mental health illnesses.  *See* R&R at 7 n.1; American Psychiatric Ass'n: Diagnostic & Statistical Manual of Mental Health Disorders, Text Revision ("DSM-IV-TR") 34 (4th ed 2000).  Plaintiff's GAF score of 58 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.  *Id.*

Finally, vocational expert Mark Anderson was also present at the November 2013 hearing.  The ALJ asked Mr. Anderson whether a hypothetical individual could perform Plaintiff's past work with her physical limitations but the following mental characteristics: can maintain concentration, persistence, and pace for two-hour blocks of time over a normal work week, and can adjust to routine and expected changes in the workplace.  Tr. 56.  Mr. Anderson stated that such an individual could perform Plaintiff's past work as a sealing machine operator, crafter, inspector, finisher, and grinder as Plaintiff performed it.  Tr. 56.

### B.    Physical Impairments

The record reveals the following facts in relation to Plaintiff's physical impairments, which include Crohn's disease, osteoporosis, stroke, and high blood pressure:

1.    On March 18, 2010, an x-ray of Plaintiff's small bowel revealed a narrowing of her terminal ileum, likely related to a stricture from Crohn's disease.  Tr. 28.

2.    On July 13, 2010, an x-ray of Plaintiff's lumbar spine revealed mild disc space narrowing and slight anterior lithesis at L4-L5.  Tr. 382.

3.    On August 18, 2011, Plaintiff visited Dr. Fouladpour and complained of abdominal pain and diarrhea.  Tr. 371–73.  Plaintiff's neck, back, abdomen, extremities, and neurological signs were normal upon examination.  Tr. 373.  Dr. Fouladpour noted that Plaintiff's Crohn's disease seemed "to be slightly less well controlled" and recommended that she follow up with gastroenterology.  Tr. 374.

4.    On September 27, 2011, Plaintiff visited the emergency room and complained about several weeks of lower abdominal pain.  Tr. 357.  The pain was moderate and intermittent.  Tr. 357.  Plaintiff reported six to seven bowel movements per day and complained of back pain.  Tr. 357.  Plaintiff reported that she had not seen her gastroenterologist "for a while."  Tr. 357.  Upon examination, Plaintiff had tenderness in her abdomen.  Tr. 358.  Plaintiff's back, extremities, and neurological signs were normal.  Tr. 358.

5.    On January 18, 2012, Plaintiff saw Dr. Lane, complaining of occasional lower abdominal pain, intermittent aches in her lower back, and left shoulder pain.  Tr. 328.  Dr. Lane's physical exam findings were normal.  Tr. 330.

-8-

6.  On January 31, 2012, Plaintiff underwent a colonoscopy. Tr. 480–81. The results of the colonoscopy showed a rectal ulcer and inflammation. Tr. 480–81.

7.  On February 8, 2012, Plaintiff saw physical therapist Elizabeth Musser upon referral from Dr. Lane. Tr. 321. The purpose of the visit was to treat back and shoulder pain. Tr. 321. Ms. Musser observed that Plaintiff had stretch weakness with posterior shoulder girdle muscles that contributed to poor posture and shoulder function and significant weakness grasping with her right (and dominant) hand. Tr. 324.

8.  On February 13, 2012, Plaintiff was taking Prednisone for her Crohn's disease and was improving. Tr. 314. Plaintiff denied pain, bleeding, and diarrhea. Tr. 315. Plaintiff's attending physician noted that the inflammation discovered during her last colonoscopy was "likely due to missing meds." Tr. 318.

9.  On March 5, 2012, Musser noted that Plaintiff had a positive straight leg raise test. Tr. 311.

10.  On March 26, 2012, Musser observed reduced shoulder movement and a negative straight leg raise test during Plaintiff's visit. Tr. 307–08.

11.  On June 11, 2012, Plaintiff indicated to Dr. Wakim-Fleming that she had four bowel movements per day. Tr. 543. Dr. Wakim-Fleming noted that Plaintiff's Crohn's disease flare-ups improved when she restarted therapy. Tr. 547.

12.  On October 30, 2012, Plaintiff visited gastroenterologist Dr. John Maxwell. Tr. 675–78. Dr. Maxwell recited Plaintiff's history with Crohn's disease, including her flare-up that occurred earlier that year. Tr. 676. Plaintiff indicated that she had five bowel movements per day. Tr. 676. Dr. Maxwell commented that the follow-up sigmoidoscopy notes—along with Plaintiff's own statements—indicated that her symptoms had improved but not totally resolved. Tr. 676. Dr. Maxwell modified Plaintiff's medications and increased her dosage of Imuran. Tr. 678. He also recommended that she take 1–2 Imodium prior to leaving the house, which would "allow her to get out of the house more frequently and with less concern." Tr. 678. Dr. Maxwell also recommended a follow-up appointment in three months. Tr. 678.

13.  On March 4, 2013, Plaintiff complained of lower back and left shoulder pain to Dr. Lane. Tr. 683. Dr. Lane's physical exam findings were unremarkable. Tr. 684.

14.  On March 22, 2013, Plaintiff reported lower back pain that worsened when her daughter fell into her a few weeks prior. Tr. 694. Plaintiff's pain worsened with activity. Tr. 694. A report indicates that Plaintiff's lower lumbar spine and buttocks were tender to palpitation. Tr. 694–95. Plaintiff also had a decreased sensation in

her left thumb, but otherwise had full, equal strength in her extremities.  Tr. 695.  An electromyography test ("EMG") of Plaintiff's left arm and hand was normal.  Tr. 703.

15.  On April 2, 2013, Plaintiff reported doing well.  Tr. 711.  Plaintiff had three formed bowel movements per day, very little cramping, and no nausea, vomiting, or chills.  Tr. 711.  Plaintiff had also returned to her baseline weight.  Tr. 711.

16.  On July 23, 2013, Plaintiff indicated to Dr. Lane that her back pain was unchanged and worsened when she ran errands.  Tr. 729.  Plaintiff's prescription, Flexeril, was helping, but she was not taking Tylenol or Motrin due to her concern about side effects.  Tr. 729.

In addition to the medical records, there are also several medical opinions included in the Transcript.  On October 24, 2013, Dr. Lane, Plaintiff's treating physician, completed a physical medical source statement on behalf of Plaintiff.  Tr. 571–79.  Dr. Lane noted that, due to back pain and disc space narrowing shown in Plaintiff's lumbar x-ray, Plaintiff could occasionally lift and carry up to 10 pounds.  Tr. 571.  In addition, Plaintiff could do the following: occasionally push and pull, sit for eight hours in two-hour stints, stand for two hours in one-hour stints, walk for one hour, occasionally stoop, and frequently balance.  Tr. 572–74.  However, Dr. Lane opined that Plaintiff could never climb stairs, ramps, ladders, and scaffolds or kneel, crouch, or crawl.  Tr. 572–74.  Dr. Lane found that, based on intermittent tingling in Plaintiff's left foot, Plaintiff could only frequently use her left foot controls.  Tr. 573.  Finally, Dr. Lane opined that Plaintiff had environmental restrictions and could not operate heavy machinery or motor vehicles due to her medications' side effects.  Tr. 575.

On June 1, 2012, state agency physician Dr. Michael Lehv reviewed Plaintiff's file.  Tr. 71–73.  Regarding Plaintiff's physical residual functional capacity ("RFC"), Dr. Lehv found that Plaintiff could:  lift up to 20 pounds occasionally; lift up to 10 pounds frequently; sit, stand, and/or walk with normal breaks for about six hours of an eight-hour work day; climb ramps and

-10-

stairs without limits; and push and pull without limits.  Tr. 71–72.  State agency physician Dr.

Diane Manos reviewed Plaintiff's file on September 30, 2012, and affirmed Dr. Lehv's findings.

Tr. 101–03.

Finally, there is abundant testimony from the November 2013 administrative hearing

regarding Plaintiff's physical impairments.  Plaintiff testified to the following:

1. Plaintiff's Crohn's disease and back pain prevents her from working.  Tr. 41–42.

2. In a normal day, Plaintiff has three to four bowel movements.  Tr. 42.  Other times, Plaintiff has cramping.  Tr. 42.  If Plaintiff feels good and tries to complete activities, including cleaning her house, she suffers with back pain the following day.  Tr. 42. Plaintiff also stated that if she has a good day with her Crohn's disease, her back hurts, but if her back feels good, her Crohn's disease is bothering her.  Tr. 42.

3. Plaintiff has not gone to church regularly in years because she is embarrassed to use the restroom frequently and worries about the smell.  Tr. 43.  This occurs when Plaintiff is having a flare-up.  Tr. 45.  Plaintiff now sits at the back of the church, making it easier for her to use the restroom without interrupting others.  Tr. 44.  Plaintiff only goes to the grocery store if she knows exactly what she wants.  Tr. 46.  Plaintiff cannot "go in there and just do grocery shopping" nor take her grandchildren with her, as she is unable to go up and down every aisle with them due to pain.  Tr. 46.  Plaintiff leans on a shopping cart, gets what she wants, and leaves the grocery store.  Tr. 46.

4. Plaintiff has flare-ups three or four times per week, or "more often than not."  Tr. 45. Plaintiff's flare-ups have worsened with age.  Tr. 41.  Plaintiff complained of daily back pain.  Tr. 46.  When she has a good day with her back, Plaintiff can sit for a while but later has to switch positions due to throbbing and numbness.  Tr. 47.  Plaintiff's Crohn's disease also causes cramping.  Tr. 49.

5. It takes Plaintiff four days to clean her house, as she cleans for one day, rests the next, and begins cleaning again.  Tr. 47–48.  This takes all day, from 9:00 a.m. to approximately 5:00 p.m. or 6:00 p.m.  Tr. 48.  Plaintiff cleans one room at a time.  Tr. 47.  She described having to start over by the time she has finished because the room has gotten dusty or dirty again.  Tr. 48.  Plaintiff's daughter helps her clean when she is home.  Tr. 47.  Plaintiff receives help, in general, from her mother, father, boyfriend, daughter, and brother.  Tr. 50.  Plaintiff expressed the feeling that, eventually, people will grow tired of helping her.  Tr. 50.

-11-

6.  When asked whether she can perform her previous work, Plaintiff asserted that she can no longer meet her quota while working on an assembly line because she would have to stop to use the restroom every 15 to 20 minutes.  Tr. 49.  Plaintiff sometimes uses the restroom every 15 minutes, and as soon as she washes her hands, needs to go again.  Tr. 49–50.

In addition to Plaintiff's own testimony at the November 2013 administrative hearing, vocational expert Mr. Anderson testified to the following:

1.  The ALJ asked Mr. Anderson to determine whether a hypothetical individual of Plaintiff's age, education, and work experience could perform her past work if the individual had the following characteristics: can perform light work; is unlimited in climbing ramps and stairs; is unlimited in balancing; can never climb ladders, ropes, or scaffolds; can occasionally stoop; can frequently kneel, crouch, and crawl; and can occasionally reach overhead bilaterally.  Tr. 55–56.  Mr. Anderson answered that such an individual could perform Plaintiff's past work as a sealing machine operator, crafter, inspector, finisher, and grinder as Plaintiff performed it.  Tr. 56.

2.  Plaintiff's attorney asked Mr. Anderson to determine whether a hypothetical individual could perform Plaintiff's past work if the individual had the following characteristics: can occasionally lift and carry up to 10 pounds and never more than that; can sit for eight hours out of an eight-hour work day, but only two hours without interruption; can stand for two hours out of an eight-hour work day; can occasionally push and pull bilaterally; can frequently operate foot pedals with her left foot; can never climb stairs, ramps, ladders, or scaffolds; can never kneel, crouch, or crawl; can stoop occasionally and balance frequently; cannot operate a motor vehicle; and can have no exposure to unprotected heights, moving mechanical parts, or vibrations.  Tr. 57–58.  Mr. Anderson answered that such an individual could perform Plaintiff's past work as a sealing machine operator and inspector as Plaintiff performed them, but not as they are described in the *Dictionary of Occupational Titles* ("DOT").[3]  Tr. 57–58.

3.  Plaintiff interjected during Mr. Anderson's testimony that, with respect to her finishing job, she would have to walk to the end of the machine, retrieve a metal tub filled with parts, push the tub back to her workstation, and take the parts out to work with them.  Tr. 58.  It took Plaintiff one minute to walk to the end of the machine, and Plaintiff had to do this approximately every 20 minutes.  Tr. 60–61.  Mr. Anderson maintained that, given Plaintiff's description, the jobs of finisher, inspector, and heat sealing operator would still be available to such a hypothetical individual.  Tr. 61.

---

[3]    The DOT is a United States Department of Labor publication, last updated in 1991, that describes the physical and mental demands of over 12,000 occupations, the skills required to perform them, and the time it takes to learn them.  Tr. 19.

4. Finally, Plaintiff's attorney asked Mr. Anderson how long an individual would have to be off-task during the work day and still be expected to maintain competitive employment.  Tr. 62.  Mr. Anderson indicated that an individual could be off-task 10–15% of any hour and still meet production requirements.  Tr. 62.

The ALJ considered this testimony, in addition to the medical evidence, in determining whether Plaintiff was entitled to disability benefits under the Act.  Tr. 11–20.

## III.  Discussion

In this case, Plaintiff timely filed written objections to the R&R.  Plaintiff objects to the Magistrate Judge's affirmation of the ALJ's decision denying her DIB and SSI benefits on three separate grounds.  First, Plaintiff alleges that the ALJ's decision that Plaintiff's mental health impairment was not severe is unsupported by substantial evidence and resulted in reversible error.  Obj. 2.  Second, Plaintiff alleges that the ALJ produced reversible error by violating the "treating physician rule" with respect to the testimony of Plaintiff's primary care physician, Dr. Mary K. Lane.  Obj. 3.  Finally, Plaintiff claims that the ALJ improperly determined Plaintiff's residual functional capacity by failing to account for Plaintiff's severe Crohn's disease.  Obj. 5. In turn, the Commissioner argues that the ALJ reasonably assessed Plaintiff's mental functioning, the medical opinions of physical functioning, and the limitations related to Crohn's disease. Def.'s Br. on the Merits 6–17, Doc #: 15.  Thus, the Commissioner argues, the ALJ's decision should be affirmed.  Def.'s Br. 6–17.

### A. Standard for Disability

Under the Social Security Act ("Act"), eligibility for benefit payments depends on the existence of a disability.  42 U.S.C. § 423(a).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

-13-

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Act provides that an individual shall be determined to be under a disability only if her "physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

An ALJ must follow a five-step sequential analysis set out in agency regulations in order to determine whether an individual is disabled under the Act.  The five steps can be summarized as follows:

1.  If the claimant is doing substantial gainful activity, she is not disabled.

2.  If the claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

3.  If the claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

4.  If the impairment does not meet or equal a listed impairment, the ALJ must then assess the claimant's residual functional capacity and use it to determine if the claimant's impairment prevents her from doing past relevant work.  If the claimant's impairment does not prevent her from doing past relevant work, she is not disabled.

5.  If the claimant is unable to perform past relevant work, she is not disabled if, based on her vocational factors and residual functional capacity, she is capable of performing other work that exists in significant numbers in the national economy.

R&R 12; 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987).  The claimant has the burden of proof at Steps One through Four of this analysis, and the burden shifts

-14-

to the Commissioner at Step Five.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

### B.  Review of the ALJ's Findings

#### 1.  The ALJ's finding that Plaintiff's mental impairment is not "severe" under 20 C.F.R. §§ 404.1520(c) and 416.920(c) is substantially supported by the record.

Plaintiff argues that the ALJ's decision that her mental health impairment is not "severe" was unsupported by substantial evidence and resulted in reversible error. Obj. 2.  Namely, Plaintiff claims that the ALJ erred at Step Two of the disability analysis.  20 C.F.R. §§ 404.1520, 416.920; *Bowen*, 482 U.S. at 140–42.  The Magistrate Judge recommends that the ALJ's decision be affirmed, finding no error at Step Two of the analysis.  R&R 11–18.  After reviewing the evidence, the Court finds that the ALJ's decision is substantially supported by the record and did not result in reversible error.

At Step Two of the disability analysis, a claimant must show that she suffers from a "severe" medically determinable physical or mental impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  An impairment is severe when it significantly limits a claimant's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Basic work activities include "(1) physical functions; (2) the capacity to see, hear, and speak; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with change in a routine work setting."  *Simpson v. Comm'r Soc. Sec.*, 344 Fed. App'x 181, 190 (6th Cir. 2009) (quoting 20 C.F.R. §§ 404.1521(a), (b), 416.921(a), (b)) (internal quotation marks omitted).  To rate the severity of an impairment, an ALJ also considers four broad, functional areas described in

Section 12.00C of the Listing of Impairments, including (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.  Tr. 12.

The Sixth Circuit has adopted a "lenient interpretation of the severity requirement," which is in part a response to the Secretary's questionable practice of denying meritorious claims in the 1980s.  *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).  Therefore, an impairment can be considered *not* severe "only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience."  *Id.* (citing *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985)).  Nevertheless, the Court may still employ the severity requirement to "screen out claims that are 'totally groundless' solely from a medical standpoint."  *Id.* at 863.  Additionally, in evaluating the severity requirement, the Sixth Circuit has noted that the mere diagnosis of a physical or mental condition says nothing about its severity.  *Id.*

Based on the evidence and testimony, the ALJ found "no persuasive evidence" that Plaintiff experienced more than mild limitations in her activities of daily living, social functioning, and concentration, persistence, or pace.  Tr. 12.  The ALJ also determined that Plaintiff had no episodes of decompensation as a result of her mental impairment.  Tr. 12.  In finding that Plaintiff's mental impairment was not severe, the ALJ recognized that Plaintiff lives independently, frequently socializes with her boyfriend and others, watches television, reads magazines, and plays cards.  Tr. 12–13.  The ALJ gave "some" weight to Dr. Pickholtz's opinion.  Tr. 17.  She explained that she credited his opinion that Plaintiff was not significantly impaired in her ability to understand, remember, and carry out simple tasks, as this was consistent with the record as a whole.  Tr. 17.  However, the ALJ noted that Dr. Pickholtz's opinion was inconsistent with itself and other evidence in the record—namely, evidence that Plaintiff has no difficulty

-16-

managing her daily affairs and maintaining positive relationships with others.  Tr. 17.  For the same reasons, the ALJ gave "little" weight to the state agency psychologists' opinions, which relied upon Dr. Pickholtz's findings.  Tr. 17–18.  Plaintiff claims that the ALJ erred in crediting Plaintiff's own remarks over Dr. Pickholtz's medical opinion.  Pl.'s Br. 10.  The Court disagrees.

First, the Court acknowledges that there is evidence in the record that might support a finding that Plaintiff's mental impairment is in fact severe.  For instance, the Court recognizes that Plaintiff's primary care physician diagnosed her with depression and prescribed Prozac.  Tr. 729–30.  In addition, several of Plaintiff's physicians observed tearful or depressed behavior during her office visits.  Tr. 328–543.  During an independent evaluation, Dr. Pickholtz found sufficient evidence to support a diagnosis for adjustment disorder with depressed mood, both mild to moderate.  Tr. 540.  Plaintiff has also complained of being stressed and indicated on multiple occasions that she feels like her life is "falling apart."  Tr. 328; Tr. 371; Tr. 279.  Finally, Plaintiff's testimony at the November 2013 hearing indicates that her depression affects her ability to work.  Tr. 51.  Based on this evidence, the ALJ might have found that Plaintiff's mental impairment was "severe" for the purposes of  20 C.F.R. §§ 404.1520(c) and 416.920(c).

However, there is also substantial evidence indicating that Plaintiff's mental impairment is not severe.  Plaintiff reported on several occasions that she was not experiencing depression, stress, or anxiety.  Tr. 81 (noting that Plaintiff denied psych reasons for not being able to complete tasks and denied social problems due to her stress and worry); Tr. 543 (noting "no depression/anxiety" or prior treatment for mental illness).  Although Plaintiff testified that she had spoken with a therapist twice, the ALJ correctly observes that "there are no therapy notes in the record to corroborate her testimony."  Tr. 12.

-17-

Furthermore, the ALJ correctly observes that portions of Dr. Pickholtz's opinion are inconsistent with itself and the record and accordingly afforded it little weight. Tr. 17. During his evaluation, Dr. Pickholtz opined that Plaintiff's "affect appeared to be normal," her "mood appeared to be appropriate," and she was not experiencing "any levels of anxiety." Tr. 537–38. Plaintiff also reported no problems at work that related to her mental impairment. Tr. 536. In fact, Plaintiff suggested that she maintained good relationships with her co-workers. Tr. 536. Likewise, the record suggests that the Plaintiff completes routine daily tasks with only mild limitations, most of which are physical in nature. Tr. 536–39. Nevertheless, Dr. Pickholtz determined that Plaintiff was somewhat impaired in her ability to relate to friends and relatives and handling the pressures of work. Tr. 17. It was not unreasonable for the ALJ to find that this was inconsistent with other evidence. Thus, the ALJ's decision to discredit this portion of Dr. Pickholtz's opinion was justified and substantially supported by other evidence in the record. *Cf. McGrew v. Comm'r of Soc. Sec.*, 343 Fed. App'x 26, 30 (6th Cir. 2009) (holding that inconsistency with other evidence in the record was a "good reason" for discounting a medical opinion).

As previously discussed, this Court is limited to determining whether the ALJ's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Rogers*, 486 F.3d at 241. The ALJ's decision to discredit certain evidence was well-reasoned and substantially supported by the record—namely, the abundant evidence that Plaintiff was not significantly limited in her ability to do basic work activities. *See* 20 C.F.R. § 404.1521(a). Therefore, the ALJ's finding that Plaintiff's mental impairment was not severe did not result in reversible error. The Court upholds this finding.

-18-

### 2. Although the ALJ found that Plaintiff's mental impairment was not "severe," the ALJ was still required to consider it in assessing the Plaintiff's RFC.

As discussed above, the ALJ's finding that Plaintiff's mental impairment was not severe was substantially supported by the record.  However, the Court finds that the ALJ did not properly consider Plaintiff's mental impairments in assessing her RFC.  This error warrants remand for further proceedings.

In *Simpson*, the Sixth Circuit held that an ALJ failed to incorporate the claimant's significant—but *not* severe—mental impairments into the calculation of her RFC.  344 Fed. App'x at 194.  The facts in *Simpson* are strikingly similar to the case at hand, as the case involved a non-severe mental impairment and a severe physical impairment. *Id.* at 190.  In *Simpson*, the ALJ found that because the claimant's mental impairment was not severe, it would not be considered in assessing her RFC. *Id.*  The Sixth Circuit held that this was error. *Id.*  The Circuit has previously held that it is "'legally irrelevant' that some of a claimant's impairments were considered non-severe, when others were found to be severe, because a finding of severity as to even one impairment clears the claimant of step two of the analysis and should cause the ALJ to consider both the severe and non-severe impairments in the remaining steps." *Id.* (quoting *Anthony v. Astrue*, 266 Fed. App'x 451, 457 (6th Cir. 2008)).  In fact, once one severe impairment is found, "the combined effect of all impairments must be considered in assessing the RFC, even if other impairments would not be severe."  *White v. Comm'r of Soc. Sec.*, 312 Fed. App'x 779, 787 (6th Cir. 2009); *accord Fisk v. Astrue*, 253 Fed. App'x 580, 584 (6th Cir. 2007) (holding that ALJ properly considered all of claimant's impairments, including non-severe impairments, when determining RFC).

-19-

It is clear from the record that the ALJ considered Plaintiff's physical impairments in assessing the RFC.  Tr. 15–18.  It is also clear, however, that the ALJ did not consider Plaintiff's mental impairment, which she had previously found to be non-severe, in assessing the RFC.  The ALJ merely discusses the weight she has afforded to Plaintiff's psychologists and her reasons for that weight—*not* the mental impairment and the evidence regarding it.  Tr. 17–18.  This stands in stark contrast to the extensive list of physical impairments that details several Exhibits and considers Plaintiff's own testimony.  Tr. 16.  Pursuant to Sixth Circuit case law, the ALJ must consider "the combined effect of all impairments," including those that were designated not severe.  *White*, 312 Fed. App'x at 787.  Because the ALJ failed to do so, the Court remands the case for proper consideration of Plaintiff's RFC.

### 3. The ALJ did not violate the treating physician rule with respect to Dr. Lane's medical opinion, as she gave "sufficiently specific" good reasons for discrediting it.

Plaintiff asserts that the ALJ erred by "assigning only little weight to Dr. Lane's opinion," as Dr. Lane was entitled to controlling weight under the treating physician rule.  Pl.'s Br. 13.  In the alternative, Plaintiff argues that the ALJ still committed reversible error by failing to provide good reasons for discounting a treating source opinion.  Pl.'s Br. 18.  In response, the Commissioner argues that the ALJ explicitly considered all evidence and gave "good reasons" for her decision.  Def.'s Br. 10–11.  In fact, the Commissioner also argues that the ALJ was correct in finding that there is no objective evidence to corroborate Dr. Lane's opinion.  Def.'s Br. 12.  Thus, the Commissioner argues, the ALJ's findings should be affirmed.  Def.'s Br. 17.

Pursuant to the treating physician rule, an ALJ "must give the opinion of a treating source controlling weight if [she] finds the opinion 'well supported by medically acceptable clinical and

laboratory diagnostic techniques' *and* 'not inconsistent with other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(c)(2)) ("Generally, we give more weight to opinions from your treating sources"). The treating physician rule is based on the rationale that treating sources are "the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." 20 C.F.R. § 404.1527(c)(2). As a result, "there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding." *Rogers*, 486 F.3d at 242.

If an ALJ gives a treating source's opinion less than controlling weight, she must give "good reasons" for doing so. *Wilson*, 378 F.3d at 544. The ALJ's reasons for discrediting a treating source's opinion must be "sufficiently specific" to make clear to any subsequent reviewers the weight given to the opinion and the reasons for that weight. *Id.* The Sixth Circuit has held that it is not enough to dismiss a treating physician's opinion as inconsistent with other evidence of record. *Friend v. Comm'r of Soc. Sec.*, 375 Fed. App'x 543, 552 (6th Cir. 2010). Rather, there must be some effort to identify the specific discrepancies and to explain "why it is the treating physician's conclusion that gets the short end of the stick." *Id.* In articulating the "good reasons" for discrediting a treating physician's opinion, an ALJ must consider various factors, including (1) the length, nature, and extent of the relationship; (2) specialization of the physician; (2) supportability of the opinion; and (4) the consistency of the opinion with the record as a whole. *Bowen*, 478 F.3d at 747; 20 C.F.R. § 416.927(c).

In the instant case, the ALJ afforded "little weight" to the Plaintiff's treating physician, Dr. Lane. Tr. 17. Dr. Lane opined that Plaintiff had the following characteristics: can lift and carry up to ten pounds occasionally; can sit for up to eight hours total in an eight-hour work day for up to two hours at a time; can walk for up to one hour total in an eight-hour work day for up to one hour at a time; can only frequently operate left foot controls or balance; can only occasionally push, pull, or stoop; can never climb ladders, ropes, scaffolds, ramps, or stairs; can never kneel, crouch, or crawl; should not work around heights, moving mechanical parts, or vibrations; should not operate a motor vehicle; cannot shop, travel without a companion, or walk at a reasonable pace on rough or uneven surfaces. Tr. 17. The ALJ identified the limitations of Dr. Lane's medical opinion, noting,

> To support her assessment, Dr. Lane repeatedly refers to the claimant's subjective complaints of back pain when performing such activities, rather than to objective clinical or diagnostic evidence to support these extreme functional limitations. Dr. Lane's treatment notes fail to supply the objective support Dr. Lane omitted from her opinion. Lastly, Dr. Lane's opinion is inconsistent with the claimant's reported activities, which include attending regular church services outside her home, performing routine household chores, and shopping for necessities. Dr. Lane's opinion carries little power to persuade.

Tr. 17.

First, contrary to Plaintiff's assertions, the ALJ reasonably found that Dr. Lane's opinion is not "well supported by medically acceptable clinical and laboratory diagnostic techniques." *Wilson*, 378 F.3d at 544. Dr. Lane's report lists "low back pain worsened with pushing and pulling," "intermittent tingling in left foot," and "low back pain worsened by standing and walking" as the evidence supporting her opinion. Tr. 571–73. As the R&R correctly observes, "'back pain' is not objective clinical or diagnostic evidence.'" R&R 20 n.3. Nor is intermittent

-22-

tingling in the left foot.  The Court notes in passing that Form HA-1151-BK (06-2006)

contemplates the possibility of "symptoms including pain etc." as medical or clinical findings to

support an assessment.  Tr. 571–73.  However, beyond one x-ray finding, these symptoms are

corroborated by no medical or clinical evidence.  As the ALJ notes, Plaintiff never saw an

orthopedic specialist, spine surgeon, or chronic pain management specialist.  Tr. 17.  Because

there is no objective evidence corroborating Dr. Lane's findings, reports of subjective symptoms

of pain are not sufficient to satisfy this prong.

Pursuant to Sixth Circuit case law, failure of this first prong alone allows the ALJ to give

the treating physician's opinion less than controlling weight.  *Wilson*, 378 F.3d at 544.  Thus, the

Court need not examine the second prong: whether Dr. Lane's opinion is consistent with the

record as a whole.  However, the Court notes that Dr. Lane's opinion does not appear

inconsistent with the record.  The ALJ determined that Dr. Lane's opinion was inconsistent with

Plaintiff's reported activities, "which include attending regular church services outside her home,

performing routine household chores, and shopping for necessities."  Tr. 17.  First, there is only

evidence that Plaintiff is not a regular churchgoer as a result of her medical condition.  Tr. 42–43;

Tr. 539; Tr. 676.  Second, these activities as reported appear consistent with Dr. Lane's findings:

standing for up to two hours total for up to one hour at a time, walking for up to one hour total

for up to one hour at a time, and lifting and carrying up to ten pounds occasionally.  Tr. 17.  For

instance, Plaintiff has described her grocery shopping as brief and difficult, stating that she leans

on a shopping cart, gets what she wants, and leaves.  Tr. 46.  She can no longer bring her

grandchildren with her because she is unable to go up and down aisles with them.  Tr. 46.

Because the Court remands for other reasons, described above, and because finding that Dr.

-23-

Lane's report is not based on medically acceptable clinical and laboratory diagnostic techniques sufficiently supports not giving Dr. Lane's opinion controlling weight, the Court need not rule on this inconsistency. However, on remand, the ALJ may wish to reconsider these findings as part of her broader reevaluation of the case.

Finally, the Court finds that the ALJ gave "good reasons" for affording Dr. Lane's opinion little weight. Pursuant to the factors enumerated in 20 C.F.R. § 416.927(c), the ALJ considered the specialization of the physician, supportability of the opinion, and consistency with the record as a whole. The ALJ noted that Dr. Lane was Plaintiff's primary care physician and did not specialize in orthopedics. Tr. 17. Nor did Plaintiff see an orthopedic specialist, spine surgeon, or chronic pain management specialist to corroborate Dr. Lane's findings. Tr. 17. In addition, the ALJ noted that the record contained evidence of negative straight leg raise testing, normal reflexes, normal strength, and a full range of motion in all extremities. Tr. 16. The ALJ observed that Plaintiff's treatment has been largely conservative and that she has responded well to treatment. Tr. 16. In fact, a sigmoidoscopy revealed significant improvement of her sigmoid stricture related to her Crohn's disease. Tr. 604. Additionally, diagnostic studies of Plaintiff's arm showed no radiculopathy or other neuropathy. Tr. 16.

While Plaintiff identifies other evidence in the record that may support Dr. Lane's opinion, there is, more importantly, substantial evidence that supports the ALJ's decision. *See Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion"). The Court therefore affirms the ALJ's decision to afford "little weight" to Dr. Lane's opinion.

4. **Because the Court remands on other grounds for reconsideration of the RFC, the Court will not address the issue of whether the ALJ reasonably accounted for Plaintiff's severe impairment of Crohn's disease.**

Although the ALJ determined that Plaintiff's Crohn's disease was a "severe" impairment, Plaintiff claims that it was not properly accounted for during the RFC assessment.  Pl.'s Br. 20. However, because the Court remands for a holistic reconsideration of the RFC, the Court will not address this issue on review: it would be meaningless to address this issue until a revised Step Four analysis has been completed.

Nevertheless, the Court must address the parties' briefings regarding the opinion of gastroenterologist Dr. Maxwell, as there is a great deal of debate as to whether the ALJ properly construed his comment.  In Dr. Maxwell's report dated November 5, 2013, he states, "I am not sure of the reasons for disability recommendations."  Tr. 678.  This comment follows an extensive discussion of Plaintiff's medical history, current condition, and attempt to obtain disability benefits.  Tr. 675–78.  In her December 2013 decision, the ALJ described Dr. Maxwell's comment as follows:

> Finally, I have read and considered the comment from John S. Maxwell, M.D., the claimant's gastroenterologist, expressing uncertainty as to why the claimant had received recommendations from others to apply for disability benefits.  While I have afforded it no weight because it concerns the ultimate issue of disability, adjudication of which the Act reserves to me on behalf of the Social Security Commissioner, Dr. Maxwell's comment indicates that, at least from a gastroenterological standpoint, the claimant's impairments do not preclude activities to the degree she alleges.

Tr. 18 (internal citations omitted).  This is the only point at which the ALJ discussed Dr. Maxwell's report in her findings.  There are two problems with this paraphrasing of Dr. Maxwell's report.  First, although the ALJ indicates that she affords Dr. Maxwell's comment "no

-25-

weight," it appears that the comment was in fact given some weight.  Tr. 18.  Dr. Maxwell's comment appears to be the sole source of gastroenterological opinion in this case, and, as Plaintiff correctly observes, the ALJ "seems to have ignored all of Dr. Maxwell's comments and recommendations beside the single sentence" referenced in her opinion.  Pl.'s Br. 23.   At no point in her Findings of Fact and Conclusions of Law does the ALJ consider the substantive content of Dr. Maxwell's medical opinion.  Plaintiff notes that this "casts doubt on the influence the statement really had on [her] RFC and the consideration given to her Crohn's disease."  Pl.'s Br. 24.

Second—and more importantly—the ALJ made a misstatement of the record as to Dr. Maxwell's comment.  The ALJ puts words in Dr. Maxwell's mouth, interpreting this comment to mean that he was uncertain "as to why the claimant had received recommendations from others to apply for disability benefits."  Tr. 18.  As Plaintiff correctly observes, Dr. Maxwell's comment ("I am not sure of the reasons for disability recommendations") is ambiguous.  Pl.'s Br. 23. There are several reasonable interpretations of this sentence, and the Court notes that the meaning the ALJ chose may not even be the most reasonable interpretation of the statement in context.[4]  The Commissioner's attempt to defend the ALJ's singular interpretation of Dr.

---

[4]     It appears to the Court that Dr. Maxwell's earlier (and only other) comment regarding disability may add important context: "She states she has been working on getting disability . . . I am not sure of the reasons for disability recommendations."  Tr. 676–78.  It is possible that Dr. Maxwell meant to say that he was unsure how he should respond, of what criteria he should discuss, to properly address request for a disability report.  This appears the more plausible inference, as Dr. Maxwell does not comment on "recommendations from others to apply for disability benefits" whatsoever.  However, the Court need not—and does not—claim to divine Dr. Maxwell's meaning; rather the Court only finds that Dr. Maxwell's meaning is patently unclear and does not support the ALJ's inferences.

Maxwell's comment is misguided, compounding this error by stating that the "ALJ reasonably interpreted the statement to mean that Dr. Maxwell did not believe that Plaintiff's Crohn's disease disabled her."  Def.'s Br. 16.

While the Court defers to the ALJ on findings of fact and medical evidence, the Court does not defer to her questionable interpretation of a grammatically ambiguous statement.  While the issues associated with Dr. Maxwell's comment do not constitute reversible error, the Court notes that the interpretation of the available gastroenterological evidence must be reevaluated on remand.  The Court leaves to the discretion of the ALJ whether additional evidence is necessary. *See Simpson*, 344 Fed. App'x at 189.

**IV.    Conclusion**

For the reasons set forth above, the Court **ADOPTS IN PART** the R&R insofar as it affirms the ALJ's decision that Plaintiff's mental impairment was not severe and the treating physician was not entitled to controlling weight.  However, the Court **VACATES** the decision of the Administrative Law Judge ("ALJ") in assessing the residual functional capacity at Step Four.  Thus, the Court **REMANDS** the case to the Social Security Administration for further proceedings consistent with this opinion

**IT IS SO ORDERED.**

*/s/ Dan A. Polster    Feb. 12, 2016                    *
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**

-27-